## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALEJO FAUSTINO, as Parent and    :
Natural Guardian and Administrator of  :
the Estate of IRA FAUSTINO, a Minor,  :
Deceased, and ALEJO FAUSTINO and   :
ERNESTINA FAUSTINO, individually,   :
and in their own right,                 :
      Plaintiffs,              :
                              :
      v.                     :     CIVIL ACTION NO. 05-3002
                              :
THE A.I. DUPONT HOSPITAL FOR    :
THE CHILDREN OF THE NEMOURS   :
FOUNDATION, THE NEMOURS       :
FOUNDATION, WILLIAM I.         :
NORWOOD, M.D., PH.D., CHRISTIAN :
PIZARRO, M.D., JOHN MURPHY,   :
M.D., ELLEN SPURRIER, M.D.,    :
DEBORAH DAVIS, M.D., and PAUL  :
KERINS,                      :
      Defendants.            :

## MEMORANDUM AND ORDER

Tucker, J.                                                **May 1, 2008**

       Plaintiffs Alejo and Ernestina Faustino are parents of deceased infant Ira Faustino. The Complaint alleges, *inter alia*, medical malpractice, wrongful death, and survival actions.[1] Presently before this Court is Defendants' Motion for Summary Judgment (Doc. 40). For the reasons set forth below, upon consideration of Defendants' Motion and Plaintiffs' Response (Docs. 41 & 42), this Court will grant Defendants' Motion for Summary Judgment.

---

[1] By Order dated November 6, 2006, this Court granted Defendants' Motion for Partial Summary Judgment thereby entering judgment in Defendants' favor on Plaintiffs' claim pursuant to the Rehibilitation Act, 29 U.S.C.S. 701. The parties stipulated to the dismissal of all individual Defendants except Defendant, William I. Norwood, M.D..

1

**BACKGROUND**

From the evidence of record, taken in the light most favorable to the Plaintiffs, the pertinent facts are as follows.  Ira Faustino, an infant, was diagnosed with congenital heart defects prior to his birth on June 5, 2001.  (Compl. ¶ 11.)  Shortly after his birth, Ira was transferred to the Nemours Cardiac Center located at the A.I. DuPont Hospital for Children for further treatment.  (Id.)  Upon examination, it was determined that Ira was suffering from heterotaxy syndrome with double right outlet right ventricle, balanced AV canal and patent ductus arteriosus; all of which are specific congenital heart defects.  (Id. ¶ 12.)

On June 11, 2001, Dr. William Norwood performed surgery on Ira to correct those defects. (Id. ¶ 13.)   Ira was discharged from the Cardiac Center after this surgery.  (Id. ¶ 14.)  Ira was re-admitted to the Cardiac Center on December 5, 2001 for a second surgery described by Plaintiffs as a hemi-fontan procedure. (Id. ¶ 15.) On December 6, 2001, he underwent the surgery, which was also performed by Dr. Norwood. (Id.)  Ira Faustino died on January 23, 2002. (Defs.' Mot. Summ. J. Ex. B. (hereinafter "E. Faustino Dep.").)

Prior to the hemi-fontan surgery, under Dr. Norwood's direction, Ira was placed on cardiopulmonary bypass.  (Compl. ¶ 16.)  Plaintiff alleges that while the anesthesia record reflects that he was cooled to 23.2 degrees centigrade in eleven minutes, the perfusion record shows that he was cooled in ten minutes. (Id. ¶ 16, 42.)  Plaintiff alleges that Ira's circulation was completely stopped for sixty-seven (67) minutes.  (Id. ¶ 16.)  Furthermore, according to Plaintiff, over the ten minutes he was cooled his rectal temperature was recorded as 21.7 degrees.  (Id. )  Plaintiffs allege that Dr. Norwood knew cooling a patient to less than 20 degrees centigrade was necessary to protect the brain and other organs during surgery.  (Id. ¶ 40, 59.)  According to Plaintiffs, Dr. Norwood knew

that Ira was not cooled as required.  (Id. ¶ 59.)

Throughout his procedures, Ira was treated with anesthesia and perfusion procedures. (Id. ¶ 17.)  Plaintiffs allege that at the time of Ira's second surgery, Dr. Norwood and his colleague were undertaking to determine if a third and final surgery could be performed in the catherization lab. (Id. ¶ 22.)  In order to prepare patients for what Plaintiffs describe as an "experiment," Plaintiffs allege that the hemi-fontan procedure (second-surgery) had to be modified.  (Id. ¶ 19.) The Faustinos claim that they were informed that this was normal and aver that they were never informed that Ira received a nonstandard surgical modification.  (Id. ¶ 47.)  The Faustinos did not receive Ira's entire medical chart at the time of his death and claim that even if they had, there would have been no indication from the chart that anything negative had occurred.  (Id. ¶ 50.)  Plaintiffs allege that this is because all references to complications or sequelae from surgical technique and/or cooling/perfusion/circulatory arrest process were purposefully omitted or obfuscated.  (Id.)

The Faustinos consented to an autopsy and received a death certificate listing respiratory failure as the immediate cause of death.  (E. Faustino Dep. at 55; Defs.' Mot. Summ. J. Ex. D. (hereinafter Death Certificate.); Defs.' Mot. Summ. J. Ex. E. (hereinafter Autopsy Report).)

On September 8, 2004, counsel, Theresa M. Blanco, Esq.,  initiated contact with the Faustinos by letter requesting a conversation for the purpose of providing "information that would be helpful in deciphering the medical records." (Defs.' Mot. Summ. J. Ex. H.)  Subsequently, counsel again wrote the Faustinos.  (Defs.' Mot. Summ. J. Ex. A. (hereinafter A. Faustino Dep. at 67).)  When the Faustinos called counsel back, she informed them that Dr. Norwood was no longer employed at the Hospital and inquired whether the Faustinos wanted to file suit.  (Id.)  The Faustinos declined.  (Id.)  Counsel called the Faustinos a few days later requesting consent to view Ira's

medical records. (Id.)  The Faustinos consented.  (Id.)  When counsel followed up to ask whether the

Faustinos were interested in pursuing suit, the Faustino's agreed.  (Id. at 68.)

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answer to interrogatories,

and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P.

R. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A factual dispute

is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the

district court of the basis of its motion and identifying those portions of the record that it believes

demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317,

322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the

movant's initial Celotex burden can be met simply by "pointing out to the district court that there

is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving

party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided

in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV.

P. R. 56(e).  That is, summary judgment is appropriate if the non-moving party fails to rebut by

making a factual showing "sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  " [I]f

the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and

has offered a genuine issue of material fact, then the court cannot credit the movant's version of

events against opponent even if the quality of the movant's evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson, 477 U.S. at 225.

## DISCUSSION

**A.     Choice of Law**

Since the events giving rise to this action occurred in Delaware, this Court must first determine whether Delaware or Pennsylvania law applies to the statute of limitations issue.  A federal court must apply the choice of law provisions of the forum state, with respect to pendant state law claims. Gluck v. Unisys Corp., 960 F.2d 1168, 1179 n.8 (3d Cir. 1992).  Furthermore, A federal district court will rely on the statute of limitations of the forum state, Guaranty Trust Co. v. York, 326 U.S. 99, 110 (1945); as well as the tolling principles of that state, Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991).

Pennsylvania courts apply the Pennsylvania statute of limitations, unless the Pennsylvania borrowing statute applies.  Mack Trucks Inc. v. Bending Westinghouse Auto. Air Brake Co., 372 F.2d 18, 20 (3d. Cir. 1966); Deleski v. Raymark Indus. Inc., 819 F.2d 377, 379 n.2 (3d Cir. 1987). Pennsylvania's borrowing statute provides that "[t]he statute of limitation applies to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim."  42 Pa. Const. Stat. Ann. § 5521(b) (2007).  With respect to actions in medical negligence, Pennsylvania and Delaware do not differ in applying a two-year statute of limitations.  See 42 Pa. Cons. Stat. Ann. § 5524(2) (2006); Del. Code Ann. tit. 18 § 6856 (2007). Thus, in the present action, the Pennsylvania

5

limitations period applies.

**B.      Statute of Limitations**

Pennsylvania law provides that the statute of limitations for personal injury actions is two years.  42 Pa. Cons. Stat. Ann. § 5524(2) (2006).  Generally, the statute of limitations for personal injury begins to run when the injury is inflicted.  Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005).

The doctrine of fraudulent concealment, however, is an exception that acts to toll the running of the statute of limitations.  Id.  The doctrine provides that the defendant may not evoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax their vigilance or deviate from his right of inquiry into the facts.  Id.  The Plaintiff has the burden of proving fraudulent concealment by clear precise and convincing evidence.  Id.

Plaintiff is not required to prove fraud in the strictest sense, such as an intent to deceive, rather fraud is interpreted broadly in this context to include unintentional deception.  Id.  However, fraudulent concealment must, at minimum, comprise " an affirmative and independent act of concealment that would divert or mislead the plaintiff from discovering the injury."  Bohus, 950 F.2d at 925.  The standard of reasonable diligence applies.  Where the doctrine of fraudulent concealment is apposite, the statute of limitations begins to run when the injured party knows or reasonably should know of his injury and its cause.  Fine, 870 A.2d at 857.  "Reasonable diligence may require that a plaintiff seek an additional medical examination and hire a lawyer."  Farrell v. A.I. Dupont Hosp., No. 04-3877, 2006 U.S. Dist. LEXIS 49079, *13 (E.D. Pa.  July 19, 2006) (citing Cochran v. GAF Corp., 666 A.2d 245, 249 (Pa. 1995)).  Additionally, "[w]here common sense would lead to plaintiff to question a misrepresentation, the plaintiff cannot reasonably rely on that misrepresentation."  Mest v. Cabot Corp., 559 F.3d 502, 516 (3d Cir. 2006).  While, reasonable

diligence is a jury question, "where the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law." <u>Debiec v. Cabot Corp.</u>, 352 F.3d 117, 129 (3d Cir. 2003).

## C.     Parties' Contentions

Defendants maintain that Plaintiffs' action is time-barred since it was commenced one and one-half years after the expiration of the statute of limitations and request summary judgment since there is no basis for tolling.  Defendant argues that there is no evidence of fraudulent concealment. According to Defendants there is no evidence that anyone affirmatively concealed the truth or otherwise induced the Faustinos to delay bringing an action.  (Def. Reply on Summ. J. at 4).  The Faustinos were informed that Ira was not well following his surgery and that his deterioration led to his death.  (<u>Id.</u>)  Moreover, Defendants aver that even if the doctors' conduct led the Faustinos to believe that death was inevitable, such conduct would not amount to fraudulent concealment.  (<u>Id.</u>) The Faustinos has an opportunity to talk to Dr. Majheed Bhat, Ira's primary cardiologist, but never accepted. (Def. Mot. Summ. J. ¶ 6(b).)  Plaintiffs did not seek the advice of any doctor or lawyer following Ira's death, rather, accuse Defendants, Plaintiffs' counsel pursued Plaintiff until they finally consented to allow her to file an action on their behalf. (<u>Id.</u> ¶ 6(c).)

Plaintiff retorts that the Faustinos were not informed by the specialists at the cardiac center that the cardiologists were monitoring Ira's condition and were treating his condition aggressively. (Pl. Answer to Def.'s Fact. Assertions ¶ 5(a).)  However no physician told the Faustinos what happened in connection with or during the surgery that caused the formation and persistence of pleural effusions.  (<u>Id.</u>) The physicians and nurses advised the Faustinos that pleural effusions would subside.  (<u>Id.</u>)  Plaintiffs assert that there is a genuine issue of fact as to whether the doctors and

7

nurses knew that Ira's pleural effusions were "life-threatening" immediately after his surgery and failed to inform the Faustinos.  (Id.)  Furthermore, Plaintiff avers that Dr. Bhat testified during his deposition that he does not know what, in connection to the surgery, caused Ira's death. (Id. ¶ 6.) This statement, according to Plaintiffs, raises a jury question as to whether the respiratory failure, listed cause of death on the death certificate, was calculated to mislead or inadvertently caused the Faustinos to be misled.  (Id.)  Plaintiffs further contend that after the surgery or after Ira's death, Dr. Norwood never "presented himself" to the Faustinos for discussion.  (Id.)  Plaintiffs aver that Dr. Norwood's "seclusion" presents a genuine issue of fact of fraudulent concealment.  (Id.)

**D.     Analysis**

Plaintiffs filed their action after the expiration of the statute of limitations on their claim. Therefore, without a basis for tolling the limitations period, Plaintiffs' claim is time-barred.  The Court finds no basis to toll the statute of limitations since Plaintiffs cannot sustain the fraudulent concealment doctrine.

**1.  Actions of Defendants**

In order for Plaintiffs to sustain their claim for fraudulent concealment, there must be an independent affirmative act of concealment by Defendant.  Bohus, 950 F.2d at 926.  Moreover, Plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence.  Fine, 870 A.2d at 860.

Plaintiffs contend that Dr. Norwood remaining silent with the Faustinos following the surgery, during Ira's treatment at the Cardiac Center, or after Ira's death gave rise to Plaintiffs' expectation that Ira could or would die.  Conspicuously absent from Plaintiffs' argument in this regard, however, is authority to support its contention that the Dr. Norwood's silence constitutes an

affirmative act.  The Court has not discovered any precedent under Pennsylvania law to support Plaintiffs' bald contention.  Moreover, Plaintiffs' argument that Dr. Norwood's silence "gave rise to an expectation and acceptance that death of their son could be a natural consequence" does not support its assertion of fraudulent concealment since, Plaintiff admits that "when a clear downhill slope [of progress] was evident . . . the various doctors approach[ed the Faustinos in a manner that candidly acknowledges that death was likely.  (Pl. Answer to Def. Fact. Assert. ¶ 5(a).)  By this very assertion, Plaintiff admits that the doctors were candid with the Faustinos about Ira's progress.

Plaintiffs state that "each day the parents were told (if they asked) the status of the baby at that time and what treatment has been or was to be administered.  (Id.)  Plaintiff argues however that this knowledge does not contradict their assertion that the doctors or nurses my have well known early on after the surgery that the pleural effusions were life-threatening.  (Id.)  The Faustinos argue that the doctors and nurses' silence amount to fraudulent concealment.  However, Defendants' silence did not relieve Plaintiffs' of their "right of inquiry" to file suit. See Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 557 (3d Cir. 1985).

Plaintiffs also state the Defendants' other actions gave rise to an expectation and acceptance of death as a possible and natural consequence of surgery including that 1) before the surgeries the Faustinos were informed that the survival rates for the three surgeries were 65-70%; 2) daily interactions with the Cardiac Center staff, who informed the Faustinos Ira's then-current condition and the anticipated course of treatment; 3) "conversations which informed the Faustinos that Ira would die."[2] 4) Ira's death certificate was uninformative; 5) the offer of an autopsy gave the impression of thoroughness and openness; 6) Dr.  Bhat offered further contact at the Faustino's

---

[2] Plaintiffs do not disclose with whom these conversations took place.

desire which reinforced the message that the Cardiac Center was open to further inquiries; 7) the results of the autopsy confirmed that there was nothing to add to what had been said to the Faustinos at the hospital.  (Pl. Resp. Opp. Def's Mot. Summ. J. 7).

Rather than illustrating any deceptive conduct by Defendants, Plaintiffs' examples only serve to negate a showing of fraudulent concealment.  Contrary to Plaintiffs' assertions, Defendants' actions illustrate transparency.  For instance, Plaintiffs admit that the Cardiac Center staff updated them on Ira's condition and course of treatment daily, after Ira died the Faustinos were offered an autopsy on Ira, and Dr. Bhat offered to available to Faustinos for questions.  Accepting Plaintiffs' contentions as true, the Court finds no fraud or concealment in the Defendants acts.

Plaintiffs admit that "a day or two before [Ira died] Mr. and Ms. Faustino began to feel that their baby was not going to get better but would die."  (Pl.'s Answer to Def.'s Fact. Assertions ¶ 5(a).) Plaintiffs are not permitted to ignore their own judgment.  See Bohus, 950 F.2d at 925-26 (stating that reliance on the a physicians word when the patients own common sense would lead to a different result is unreasonable).  A doctor's statement that the surgery "went fine" could not be reconciled with the fact the child died shortly after the surgery.  See Workman v. A.I duPont Hosp., No. 06-0743, 2007 U.S. Dist. LEXIS 54832 (E.D. Pa. July 7, 2007) *21 (citing Farrell v. A.I. duPont Hosp., No. 04-3877, 2006 U.S. Dist. LEXIS 49079 *20-21 (E.D. Pa. July 19, 2006)). "Once the injury and its cause are known or reasonably should be known, confidence in the operating surgeon will not excuse the duty of reasonable diligence."  Id.

Plaintiffs maintain that Ira's death was not sufficient to alert the Faustinos of possible negligence.  In Pennsylvania, however, death puts survivors on notice that an injury has occurred and that the survivors then have an obligation to proceed with any appropriate investigation.  See Kaskie

v. Wright, 589 A.2d 213 (Pa. Super. 1991); Pasterick v. Johns-Manville Corp., 526 A.2d 323, 326 (Pa. 1987); Workman v. A.I duPont Hosp., 2007 U.S. Dist. LEXIS 5483**;** Farrell, 2006 U.S. Dist. LEXIS 49079 at *12 n5 (citing Pastierik v. Duquesne Light Co., 514 Pa. 517, 526 A.2d 323 (Pa. 1987)).

In an attempt to distinguish the facts in Farrell and Workman, Plaintiffs maintain that under the instant facts, death is not sufficient notice of injury.  The facts of Farrell and Workman, however, are nearly identical to the facts presently before this Court.  In both Farrell and Workman, plaintiffs brought suit after the death of their infant children as a result of cardiac surgery performed by Dr. Norwood.  Workman v. A.I duPont Hosp., No. 06-0743, 2007 U.S. Dist. LEXIS 54832**;** Farrell, 2006 U.S. Dist. LEXIS 49079.  In Farrell, the court held that "on the date Ms. Farrell received the results of autopsy, she had all the information necessary to maintain a lawsuit.  She knew that Ashley died, and she knew the doctors who operated on her."  Farrell, 2006 U.S. Dist. LEXIS 49079 at *24.  In Workman, the court held that, notwithstanding any conflicting statements by the doctors about the success of the surgery, the parents had actual knowledge of the injury and its possible cause on the date the child died.  Id.; Workman, 2007 U.S. Dist. LEXIS 54832; See also Everwine v. Nemours Found., No. 05-3004, 2006 U.S. Dist. LEXIS 16473 (E.D. Pa. April 4, 2006).  Any conflicting statements by doctors  regarding the success of Ira's surgery, do not excuse the Faustino's from exercising sound judgment that an injury had occurred—namely Ira's death—and that the injury was causally related to the surgery.

### 2.  The Team Approach

Plaintiffs contend that the cardiac center's team treatment approach impeded the flow of information from doctor to patient.  Placing the charge of communication upon a different person

each day, Plaintiffs argue, diminishes the chance of the patient developing a valid trusting relationship with the medical staff.  Plaintiffs complain that although the doctors and nurses met during morning rounds to discuss each patient, those meeting never included the parents.  According to Plaintiffs, no one physician communicated with the parents continuously.

However, according to Plaintiffs, the reports to the Faustinos were consistent in one respect: the physician reported daily to the Faustinos on the down-hill course of Ira's treatment.  Plaintiffs interpreted this message as an indication that death should be anticipated as part of a natural course.  Plaintiffs assert that medical team's "business-as-usual" response to Ira's death and the lack of a single individual with which Plaintiffs could communicate amounted to a representation that Ira's death was a result of natural causes.

In Pennsylvania, if a doctor or nurse assures a patient that an injury is the result of natural causes, then that assurance may constitute fraudulent concealment if it diverts the patients from their right of inquiry.  Workman v. A.I duPont Hosp., No. 06-0743, 2007 U.S. Dist. LEXIS 54832 (citing Bohus, 950 F.2d 919; Burton Lister v. Siegel, 798 A.2d 231, 237-38 (Pa. Super. Ct. 2002)).   In Burton Lisher, the Court held that a jury could reasonably find that when a mother was told by her doctor that her daughter's brain damage was "an act of God" she acted reasonably in not investigating the cause.  Burton Lisher, 798 A.2d 237-38.  Similarly, in Bohus, the court held that the jury could have found "clear, precise, and convincing" evidence of fraudulent concealment where the doctor repeatedly assured the plaintiff that her pain was part of the healing process and would eventually subside. 950 F.2d 926.

In the instant matter, there is no clear, precise and convincing evidence upon which a jury could find the hospital staff made statements suggesting that Ira's death was a result of natural

causes.  Instead, as the Faustinos concede, the doctors reported daily on Ira's progress and informed the Faustinos that there was a thirty-percent possibility that Ira could die.  Pl. Brief in Opp'n. to Mot. Summ. J. 7.  These warnings were not affirmative representations that Ira's was death a result of natural causes since no one told the Faustinos that Ira's death was natural or unavoidable.  To the contrary, by the Faustinos own admission, the doctors informed the Faustinos that there was a seventy-percent chance Ira could survive the surgical complications.  The Faustinos misinterpretation does not constitute fraudulent concealment.  See Fine, 870 A.2d at 857 ("[m]istake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute.").

### 3. Reasonable Diligence

Plaintiffs argue that there is a jury question as to whether the Faustinos exercised reasonable diligence since the jury could consider the continuing grief of the Faustinos in their analysis.  Plaintiffs cite Petri v. Smith, 453 A.2d 342, 344 (Pa. Super. 1982), for the proposition that the fact-finder may conduct a contextualized analysis of the Plaintiffs' individual circumstances in determining whether the Plaintiffs exercised reasonable diligence and this Court must leave such an analysis to the jury.

As an initial matter, it must be noted that an inquiry into whether Plaintiff exercised reasonable diligence is appropriate only after fraudulent concealment has been established. Once the Court has determined that Defendant has engaged in fraudulent concealment "the statute of limitations is tolled until the plaintiff knew or using reasonable diligence should have known of the claim." Bohus, 950 F.2d 925-26.  As explained, Plaintiffs have not established fraudulent concealment, therefore the Court may end its analysis here.  However, for the purposes of clarity and consistency, the Court must address the findings of Petri.  Plaintiffs misinterpret the Pennsylvania

13

Superior Court's findings in <u>Petri</u>.  The Pennsylvania Superior Court, aptly addressed Plaintiffs misinterpretation.

> <u>Petri</u> held that the court below, in the circumstances of that case, erred in determining as a matter of law that the appellant's failure to obtain knowledge concerning her son's injury was unreasonable.  It does not stand for the proposition that the applicability of the statute of limitations can only be determined by a fact finder.

> <u>Chandler v. Johns-Manville Corp.</u>, 507 A.2d 125, 1257 (Pa. Super. 1986)

The Superior Court has also held "[t]he discovery rule . . . arises from the inability of the injured *despite the exercise of due diligence,* to know of the injury or its cause."[3] <u>Bickford v. Joson</u>, 533 A.2d 1029, 1987 (Pa. Super. 1987).  The inquiry is whether Plaintiff knew or should have known of an injury or its cause. <u>Bohus</u>, 950 F.2d 926.  The test is objective.  For the reasons already stated, Plaintiffs' actions do not amount to reasonable diligence.

Furthermore, this Court declines to engage in an analysis of "such factors as plaintiff's age, education, relationship with her physician, desperation for a cure, and level of grief" where the Plaintiff have not offered, nor has this Court found any precedent for such an analysis.  Pl. Br. Opp'n Def. Mot. Summ J. 18.

## <u>CONCLUSION</u>

The death of an infant is a tragedy.  The statute of limitations however enures the harsh result of foreclosing remedy based on the lapse of time.  For the foregoing reasons this Court concludes that the neither the doctrine of fraudulent concealment nor the discovery rule provide a basis for tolling the statute of limitations.  An appropriate Order follows.

---

[3] The discovery rule is a corollary to the doctrine of fraudulent concealment.  The inquiry under fraudulent concealment is same as that under the discovery rule.  <u>Bohus</u>, 950 F.2d 925,26.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALEJO FAUSTINO, as Parent and** | : | |
| **Natural Guardian and Administrator of** | : | |
| **the Estate of IRA FAUSTINO, a Minor,** | : | |
| **Deceased, and ALEJO FAUSTINO and** | : | |
| **ERNESTINA FAUSTINO, individually,** | : | |
| **and in their own right,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 05-3002** |
| | : | |
| **THE A.I. DUPONT HOSPITAL FOR** | : | |
| **THE CHILDREN OF THE NEMOURS** | : | |
| **FOUNDATION, THE NEMOURS** | : | |
| **FOUNDATION, WILLIAM I.** | : | |
| **NORWOOD, M.D., PH.D., CHRISTIAN** | : | |
| **PIZARRO, M.D., JOHN MURPHY,** | : | |
| **M.D., ELLEN SPURRIER, M.D.,** | : | |
| **DEBORAH DAVIS, M.D., and PAUL** | : | |
| **KERINS,** | : | |
| **Defendants.** | : | |

## ORDER

      **AND NOW**, this _____ day of May, 2008, upon consideration of Defendants' Motion for Summary Judgment (Doc. 40), Plaintiffs' Response (Docs. 41 & 42), and Defendant's Reply, **IT IS HEREBY ORDERED** and **DECREED** that Defendants' Motion for is **GRANTED**. **JUDGMENT IS ENTERED** against Plaintiff and for Defendant.

      **IT IS FURTHER ORDERED** that Defendants' Motion for Sanctions (Doc. 45) is **DENIED**.

                                                **BY THE COURT:**

                                                **/s/ Petrese B. Tucker**

                                         _____

                                         **Hon. Petrese B. Tucker, U.S.D.J.**